

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-2-2007

# Rabinowitz v. Amerigas

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4037

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Rabinowitz v. Amerigas" (2007). *2007 Decisions*. Paper 272.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/272

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4037
_____

GLORIA V. RABINOWITZ,

*Appellant*,

v.

AMERIGAS PARTNERS, L.P.,
CAREY M. MONAGHAN, and EUGENE V.N. BISSELL,

*Appellees*.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Civil No. 05-cv-04278)
Magistrate Judge: Honorable Jacob P. Hart

_____

Submitted Under Third Circuit LAR 34.1(a)
October 25, 2007

Before: SLOVITER, CHAGARES and HARDIMAN, *Circuit Judges*.

Filed: November 2, 2007
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

This employment discrimination case is an appeal from the District Court's grant

of summary judgment in favor of AmeriGas Partners L.P. (AmeriGas) and two of its

executives, Carey M. Monaghan (Monaghan) and Eugene V.N. Bissell (Bissell).  Plaintiff

Gloria V. Rabinowitz (Rabinowitz) brought claims of gender and age discrimination

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and the

Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann.  §§ 951 *et seq.* after

AmeriGas terminated her position as Director of Strategic Analysis.  Because we

conclude that Rabinowitz cannot show that AmeriGas's asserted reasons for her

termination were a pretext for age or gender discrimination, we will affirm.

## I.

"Our standard of review over the District Court's grant of summary judgment is

plenary, and we apply the same standard that the District Court should have applied." *In

re Color Tile Inc.,* 475 F.3d 508, 512 (3d Cir. 2007).  "Summary judgment is appropriate

when the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." *Andreoli v.

Gates,* 482 F.3d 641, 647 (3d Cir. 2007) (quoting Fed. R. Civ. P. 56(c)) (internal

quotation marks omitted).  Under Rule 56 of the Federal Rules of Civil Procedure, we

"must view the facts in the light most favorable to the nonmoving party and draw all

inferences in that party's favor." *Id.* (citation omitted).

## II.

Because we write for the parties, we repeat only the facts essential to our decision. AmeriGas's business involves the transportation, storage, and sale of propane to commercial and residential users. Rabinowitz joined AmeriGas in the fall of 2001 as the Director of Strategic Analysis. Bissell, the CEO of AmeriGas, hired Rabinowitz to review and analyze trends and developments within the propane industry, and to provide him with strategic advice on external issues. Rabinowitz was 56 years old at the time she was hired.

Shortly after she arrived at AmeriGas, Rabinowitz was appointed Project Manager for the Sales Growth Project, a new initiative designed to develop a strategy for AmeriGas to improve its slumping sales growth. For purposes of the Sales Growth Project, Rabinowitz was to report to Monaghan, who at that time was Vice President of Business Transformation and Marketing. Bissell emphasized to Rabinowitz that working on the Sales Growth Project would give her an opportunity to "bond" with Monaghan, and that a successful project might increase her chances of becoming Vice President of Marketing, a position that did not yet exist but that Bissell considered part of his long-term vision for the company.

Rabinowitz did not "bond" with Monaghan while working on the Sales Growth Project, however. Rather, Rabinowitz felt that Monaghan generally failed to provide meaningful guidance or cooperation, embarrassed her by unfairly criticizing her in front of colleagues and subordinates on at least one occasion, and ultimately took full credit for the Sales Growth Project's success without acknowledging her work or that of other

3

members of the team. Rabinowitz complained to Bissell about Monaghan's lack of support and involvement, and Bissell noted it in Monaghan's annual performance review.

The Sales Growth Project concluded in the autumn of 2002. One of the recommendations of the Sales Growth Project was the hiring of a Vice President of Sales, and the company promptly began interviewing candidates for the position. Rabinowitz admits that she was aware of the position and that the company was in the process of interviewing candidates, but nevertheless failed to apply or otherwise express interest herself. Rather, she claims that Bissell's repeated assurances that she would have the opportunity to apply for the Vice President of Marketing position deterred her from applying for the new Vice President of Sales position. Bissell admits that he often mentioned promotional opportunities to Rabinowitz, including his hope that the company would ultimately have both a Vice President of Sales and Vice President of Marketing, and that he told Rabinowitz that he would actively consider her for the Vice President of Marketing position once it was created. The company hired Michael Vassalotti, a 37 year-old male, as Vice President of Sales in October 2002.

Bissell issued Rabinowitz her first and only performance review in December 2002, giving her an overall rating of "met goal" and noting that she had exceeded expectations with regard to her leadership of the Sales Growth Project. Bissell also acknowledged that Rabinowitz had received limited support from Monaghan, but advised Rabinowitz that she might improve by using the analysis she had been doing to contribute to the strategic direction of the company.

4

The following spring, AmeriGas conducted a substantial company-wide reorganization, although the creation of the Vice President of Marketing position that Rabinowitz hoped and expected to fill never materialized. Instead, Monaghan's title was simply changed to Vice President of Sales and Marketing and his job duties expanded in some respects. The reorganization also included a substantial reduction in force, and Bissell instructed his senior managers to eliminate any positions that did not directly contribute to AmeriGas's core growth or earnings. Bissell evaluated his own direct reports under this standard and concluded that Rabinowitz's position "was something of a luxury compared to some of the other core jobs" that were retained. Accordingly, Bissell decided to eliminate Rabinowitz's position as of June 3, 2003.

Approximately a year after Rabinowitz's termination, Vassalotti resigned his position as Vice President of Sales, and AmeriGas replaced him with Greg Robey, a male some ten years younger than Rabinowitz. AmeriGas made no attempt to contact Rabinowitz regarding the opening.

## III.

At the conclusion of discovery, AmeriGas, Monaghan, and Bissell moved for summary judgment, arguing that Rabinowitz had failed to establish a *prima facie* case of gender and age discrimination, and in any case could not establish that the company's asserted legitimate and nondiscriminatory reason for her termination was pretextual. The District Court agreed that Rabinowitz had failed to adduce sufficient evidence to allow a

5

reasonable jury to disbelieve AmeriGas's stated reason for her termination, and granted summary judgment on all claims.

Disparate treatment claims brought under Title VII, the ADEA, and the PHRA are all analyzed using the familiar three-step framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). At issue here is the third step of that burden-shifting framework, in which the plaintiff bears the burden of demonstrating that the employer's asserted justification is simply a pretext designed to mask discrimination.

To avoid summary judgment, the plaintiff's burden on summary judgment is to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The plaintiff must adduce evidence sufficient to "allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* (internal citation omitted). To do so, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 765 (internal quotations and

6

citations omitted). It is not sufficient to show that the employer's decision was wrong, mistaken, imprudent or incompetently made. *Id.*

Rabinowitz claims that the District Court overlooked a number of facts which, if properly considered together, cast substantial doubt upon the credibility of AmeriGas's asserted justification for her termination. She argues that AmeriGas offered little explanation as to how Bissell determined that her position was not a "core" position, or how individual employees subject to the reduction in force were evaluated. She questions Bissell's decision to give Monaghan the title of Vice President of Sales and Marketing shortly before the reduction in force, despite what she viewed as Monaghan's poor job performance compared to her own. She claims that Bissell intentionally misled her into not applying for the Vice President of Sales position by promising her that she would have an opportunity to become Vice President of Marketing in the future. Rabinowitz also complains that the company ultimately hired a much younger man, Vassalotti, as Vice President of Sales, and then failed to inform her of Vassalotti's resignation a year later, choosing instead to replace him with yet another younger male. Finally, she notes that there were no women on AmeriGas's Board of Directors, and that her termination left only one woman in AmeriGas's senior management. All of this, Rabinowitz argues, is sufficient to permit a reasonable juror to reject AmeriGas's asserted justification for her termination.

We find that the District Court properly and thoroughly considered each of Appellant's arguments, and agree that she has failed to meet her burden under *Fuentes*.

7

Even assuming *arguendo* that AmeriGas did not conclusively prove its asserted rationale for Rabinowitz's termination, that is not the employer's burden. *Id.* at 763 ("The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." (emphasis in original)). Here, Rabinowitz has produced almost nothing to suggest that it was irrational for Bissell to focus on retaining "core" positions, or that the manner in which he implemented the reduction in force was implausible or inconsistent.

Instead, Rabinowitz relies largely upon her own personal evaluation of Monaghan's performance and qualifications to challenge Bissell's decision to give Monaghan the title of Vice President of Sales and Marketing several weeks before the reduction in force. Rabinowitz believes the position should have been given to her in light of what she perceives as Monaghan's failure to turn propane sales around. Yet it is well-settled that a plaintiff may not defeat summary judgment merely by questioning the business judgment behind an employer's decision, absent other evidence of impermissible motives. *See, e.g., Billet v. CIGNA Corp.*, 940 F.2d 812, 825-828 (3d Cir. 1991). This is particularly true where, as here, the plaintiff's evidence consists largely of subjective assertions which are unsupported and even contradicted by the record. As the District Court observed, Monaghan's 2002 performance review indicated that he had exceeded his goals in "growth and earnings." Rabinowitz offers nothing, save her own general assertions, to suggest that Monaghan was "solely" or "directly" responsible for the

8

company's failure to improve sales. Nor does she offer anything to suggest that Bissell was motivated by improper motives in deciding to name Monaghan the new Vice President of Marketing and Sales.

Rabinowitz's remaining arguments are similarly unavailing. Even if her "bait and switch" theory regarding the Vice President of Sales position were sufficient to establish pretext as a matter of law, she has fallen well short of providing a factual basis for such a finding. It is undisputed that Bissell never promised Rabinowitz that a Vice President of Sales position would be created, or guaranteed her that she would fill the position. Nor is there any evidence that Bissell shared his hope to create such a position simply to deter her from applying to become Vice President of Sales. AmeriGas's failure to contact Rabinowitz regarding the position following Vassalotti's resignation, approximately a year after she left the company, does little to bolster her theory. As the District Court observed, non-union employers are under no legal obligation to seek out former employees when a vacancy occurs. This is particularly true where the former employee never applied for the position in the first place. Finally, we agree with the District Court that the absence of women on AmeriGas's Board of Directors or in senior management – absent additional evidence such as the selection criteria and decisionmakers for the Board of Directors or the applicant pool for senior management positions – is not sufficient to establish pretext in this case.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Defendants.